United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

RICHARD HARRISON,

Plaintiff,

v.

ROBERT HALF, INC.,

Defendant.

Case No. 24-cv-04107-ASK

**ORDER RE MOTION FOR SUMMARY JUDGMENT**

Re: Dkt. No. 37

Plaintiff Richard Harrison alleges that his former employer, Defendant Robert Half, Inc. (the "Company"), violated Minnesota law by firing him for reporting an incident of sexual harassment. Dkt. 1.[1] The Company moves for summary judgment on Harrison's retaliation claims. Dkt. 37. Having considered the briefing, and with the benefit of oral argument on March 11, 2026, the Court **GRANTS** the Company's motion for summary judgment. On this record, there is no genuine dispute that the Company terminated Harrison for physically assaulting another employee at a work event. Put another way, no reasonable jury could find that the Company fired Harrison for his protected reporting conduct.

## I.    BACKGROUND

The following facts are undisputed. On the dance floor at a work event in Las Vegas, Nevada, Sean Button—a Company employee from Texas whom Harrison had never met—slapped Harrison on his bottom. Dkts. 37-9; 37-2 at 124:19-22; 37-3 at 16:11-16. Button claims that he had mistaken Harrison for another colleague of similar size and build, Brian Baumgartner, who Button believed had just playfully slapped his bottom. Dkts. 37-25 at 5; 48-5 at 81:1-22; 37-4 at 43:2–

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

47:3 (Baumgartner testifying that "[i]t sounds like I patted him on the butt. I don't recall the ins and outs. I'm pretty sure I did. I wouldn't put it past me."). Harrison was "very taken aback" by Button's slap and, in response, shoved Button away. Dkts. 37-2 at 125:11-24; 37-9. Button then left the dance floor. Dkt. 37-9.

Harrison, having decided "this guy needs to be out of the nightclub," pursued Button. Dkt. 37-2 at 129:1-14. Upon encountering Button, Harrison grabbed Button's ear. Dkt. 37-10. A scuffle ensued, during which Button sustained a cut on the back of his head. Dkts. 37-11; 37-3 at 98:5-23, 100:7-14, 106:15-19. Harrison then forcefully held Button, while walking and pulling him downstairs and through the lobby, and finally pushed Button out of the building's exit. Dkts. 37-13, 37-14, 37-15, and 37-16.[2]

Both Harrison and Button reported the incident to the Company. After the Company's in-house legal department investigated, the Company terminated Harrison for physically attacking Button. Dkt. 37-8 at 115:25–116:19. The Company issued Button a written warning for slapping Harrison. Dkt. 37-28.

Harrison sues the company for "reprisal" under the Minnesota Human Rights Act ("MHRA"), Minn. Stat. § 363A.15, and retaliation under the Minnesota Whistleblower Act ("MWA"), Minn. Stat. § 181.932. As the architect of his own complaint—and likely for the purpose of avoiding an argument that one of his Minnesota statutory claims preempts the other—Harrison specifies that the MHRA claim concerns Harrison's internal complaint to the Company, whereas the MWA claim concerns Harrison's external report to law enforcement. Dkt. 46 at 7, 21–22. Both claims require Harrison to prove that he was terminated because of his protected conduct. *See* Minn. Stat. Ann. § 363A.15 (prohibiting reprisal "because" of protected conduct); Minn. Stat. Ann. § 181.932 (prohibiting retaliation "because" of protected conduct).

## II.    LEGAL STANDARD

Summary judgment is proper when a "movant shows that there is no genuine dispute as to

---

[2] Hotel video cameras captured the entire sequence of events from Button slapping Harrison to Harrison's ousting of Button. Dkts. 37-9, 37-10, 37-11, 37-12, 37-13, 37-14, 37-15, 37-16. That video was obtained during litigation; the Company did not seek or obtain it while conducting its investigation or making its adverse employment decisions.

United States District Court
Northern District of California

any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Proc. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is "genuine" if there is evidence in the record sufficient for a reasonable trier of fact to decide in favor of the nonmoving party. *Id.* In determining whether a dispute is genuine, the Court views the inferences reasonably drawn from the materials in the record in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986), and "may not weigh the evidence or make credibility determinations," *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997), *overruled on other grounds by Shakur v. Schriro*, 514 F.3d 878, 884–85 (9th Cir. 2008).

As the moving party, the Company "bears the burden of showing there is no material factual dispute." *Hill v. R+L Carriers, Inc.*, 690 F. Supp. 2d 1001, 1004 (N.D. Cal. 2010). Where the Company bears the burden of proof on an issue, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the Company. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). By contrast, where Harrison bears the burden of proof on an issue, the Company "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). If the Company meets its initial burden, then Harrison must set forth "specific facts showing that there is a genuine issue for trial." *Liberty Lobby*, 477 U.S. at 250 (cleaned up).

## III.    DISCUSSION

Harrison's claims "may be proved by either direct evidence or under the *McDonnell Douglas* burden-shifting framework." *Naguib v. Trimark Hotel Corp.*, 903 F.3d 806, 811 (8th Cir. 2018); *see Hanson v. Dep't of Nat. Res.*, 972 N.W.2d 362, 372–73 (Minn. 2022).

"Direct evidence shows a specific link between the alleged animus and the termination sufficient to support a substantially strong inference that the employer acted based upon that animus." *Naguib*, 903 F.3d at 811 (cleaned up).

*United States District Court*
*Northern District of California*

By contrast, under the familiar *McDonnell Douglas* three-step framework, Harrison must first establish a prima facie case by demonstrating that he engaged in protected conduct, that he suffered an adverse employment action, and that a causal connection exists between the two. *Id*. If Harrison establishes a prima facie case, then the burden shifts to the Company "to articulate a legitimate, non-retaliatory reason for the action." *Id*. (cleaned up). If the Company provides a non-retaliatory reason for terminating Harrison, then Harrison must "demonstrate that the stated reason is pretextual." *Naguib*, 903 F.3d at 811; *see Hanson*, 972 N.W.2d at 373.

Harrison argues against application of the *McDonnell Douglas* burden-shifting framework, given that the Minnesota Supreme Court is currently reconsidering whether the *McDonnell Douglas* framework violates the summary judgment standard codified in Rule 56.01 of the Minnesota Rules of Civil Procedure by imposing affirmative evidentiary burdens on the non-moving party. Dkt. 59; *see Olds v. City of Moorhead*, Case No. A24-2001; Brief of Appellant, *Troy Olds v. City of Moorhead*, Case No. A24-2001, at 18–19 (arguing that the application of the *McDonnell Douglas* standard violates Minnesota Rule of Civil Procedure 56.01). But that dispute is immaterial here, in federal court, where the Federal Rules of Civil Procedure govern. *See Snead v. Metro. Prop. & Cas. Ins. Co.*, 237 F.3d 1080, 1090 (9th Cir. 2001) ("[U]nder the *Erie* doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law.") (quoting *Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 427 (1996)).

Indeed, in *Snead v. Metropolitan Property & Casualty Insurance Company*, the Ninth Circuit expressly held "that when entertaining motions for summary judgment in employment discrimination cases arising under state law, federal courts sitting in diversity must apply the *McDonnell Douglas* burden-shifting scheme as a federal procedural rule." 237 F.3d at 1094. The Court "must, therefore, examine the evidence tendered on summary judgment beyond the prima facie case in accordance with *McDonnell Douglas*' burden-shifting model" ***even when*** the state summary judgment standard only requires a prima facie showing in employment cases. *Id*. at 1093. This is because "overriding federal interests require application of federal law" in employment cases. *Id*. at 1091.

Making a prima facie showing of employment discrimination is not

United States District Court
Northern District of California

an onerous burden. **If federal courts sitting in diversity were compelled to follow [state summary judgment law requiring only a prima facie showing from employment plaintiffs], nearly every case of employment discrimination filed under [state] law would go to trial, providing an increased burden on the district courts' already crowded trial dockets.** This burden is too high a price to pay for an outcome that would be identical if all three *McDonnell Douglas* components were applied at the summary judgment stage rather than at trial.

*Id.* at 1091–92 (emphasis added); *see also Dawson v. Entek Int'l*, 630 F.3d 928, 935 (9th Cir. 2011) ("*Snead* represents the law of this circuit and applies in all cases in federal district court in which the choice between federal and state procedural law is presented.").

Accordingly, the Court first applies the direct evidence test, and, in the absence of direct evidence, applies the *McDonnell Douglas* framework.

### A.    Direct Evidence

On this record, there is no direct evidence that "amount[s] to a specific link sufficient to support a strong inference" that the Company fired Harrison for any protected conduct. *Naguib*, 903 F.3d at 812. Certainly, the Company knew of Harrison's internal complaint and external report to law enforcement at the time of Harrison's termination. But that fact does not supply a "strong inference" of the protected conduct causing the termination. Indeed, if proof of knowledge and an adverse employment action were sufficient to create a triable issue of material fact, ***every*** plaintiff facing a potential adverse employment action could make a report and be guaranteed a trial on a retaliation claim. None of the authorities that Harrison cites even remotely support such a proposition, and such an approach would violate the principal laid out in *Snead*. 237 F.3d at 1091–92 (requiring a showing of causation at the summary judgment stage because anything less "would only delay the inevitable" and "provid[e] an increased burden on the district courts' already crowded trial dockets.").

Here, nothing in the record suggests that the Company terminated Harrison because he chose to initiate an internal or external complaint. The "Findings" section of the Company's investigation summary is devoid of any mention of Harrison's report—or Button's for that matter. *See* Dkt. 37-26. If anything, the Company expressed a ***preference*** for Harrison resorting to a complaint process rather than violence in response to the slap. *Id*. at 5 ("[Harrison] had other

options for handling the situation, none of which included hunting for [Button] after the initial interaction on the dance floor ended and physically tackling and dragging [Button] causing injury to him."). Ultimately, the record here consistently shows that the Company investigated the underlying conduct of each employee—*i.e.*, Button's slap and Harrison's response—assessed the latter to be more problematic, and meted out consequences based on that assessment without expressing concern, dismay, or animus as to the fact that either of those employees raised complaints.

Harrison insists that his physical assault of Button is "inextricably intertwined" with his protected report to law enforcement by characterizing the attack as a citizen's arrest permitted under Nevada law. Dkts. 59 at 3, 46 at 30; *see* Nev. Rev. Stat. Ann. § 171.126. In other words, Harrison argues that the assault itself amounts to protected conduct under the MWA. *See* Dkt. 46 at 22 (Harrison clarifying that his MWA claim relates to his "*external* report to security/law enforcement" (emphasis in original)). Not so.

The MWA only protects employees who "report[] a violation," "participate in an investigation," "refuse[] an employer's [illegal] order[,]" "report[]" a healthcare violation, "communicate[]" a study, or "communicate[]" information about a state program. Minn. Stat. Ann. § 181.932. "Whether an employee's conduct constituted a protected report is a question of law." *Skare v. Extendicare Health Servs., Inc.*, 515 F.3d 836, 840 (8th Cir. 2008). "The word 'report' under the whistleblower statute means either (1) to make or present an often official, formal, or regular account of or (2) to relate or tell about." *Id*. at 840–41 (cleaned up); *see also Pedersen v. Bio-Med. Applications of Minnesota*, 992 F. Supp. 2d 934, 940 n.7 (D. Minn. 2014), *aff'd*, 775 F.3d 1049 (8th Cir. 2015) ("Courts have repeatedly recognized that whether an employee's conduct constituted a 'report' may be decided as a matter of law." (cleaned up)).

Therefore, as a matter of law, Harrison's physical apprehension of Button does not qualify as protected conduct under the MWA. The attack was neither a presentation of Harrison's account nor a telling of the slap. Harrison offers no Minnesota law providing that a citizen's arrest—let alone a violent one—qualifies as protected reporting conduct under the MWA that is immune from employer discipline. On the contrary, courts consistently distinguish protected reporting from

United States District Court
Northern District of California

aggressive and unprofessional behavior, often in the context of ruling that intervening misconduct "negate[s] an inference of a causal connection[.]" *Johnson v. Schulte Hosp. Grp., Inc.*, 66 F.4th 1110, 1117–18 (8th Cir. 2023) (collecting cases); *see also Mervine v. Plant Eng'g Servs., LLC*, 859 F.3d 519, 527 (8th Cir. 2017) ("Whatever causal inference that might have been drawn from the temporal proximity between [the plaintiff's] protected activity and the termination of his employment was vitiated by the intervening … misconduct."); *Kiel v. Select Artificials, Inc.*, 169 F.3d 1131, 1136 (8th Cir. 1999) (ruling that insults and angry outbursts in the presence of co-workers were "certainly not" protected communications); *Combites v. SimonDelivers, Inc.*, No. 04-cv-4571, 2005 WL 3054597, at *3 (D. Minn. Nov. 14, 2005) ("Even if plaintiff had engaged in protected conduct under the Whistleblower Act, the Whistleblower Act confers no right to be rude, to act unprofessionally, or to yell at one's supervisor in front of a co-worker." (cleaned up)).

Neither of Harrison's cited cases indicate otherwise. In *Pye v. Nu Aire, Inc.*, the plaintiff was terminated for threatening litigation during the employer's investigation into the plaintiff's discrimination complaint. 641 F.3d 1011, 1020–21 (8th Cir. 2011). The Eighth Circuit ruled that "the proffered reason for termination is inextricably intertwined with the protected conduct at issue" because "the evidence show[ed] that [the plaintiff's] termination was a direct result of his complaint of discrimination and his suggestions of remedies, prompted by the investigator's questions." *Id*. at 1021. Because the plaintiff's "statements during the investigation of his charge of discrimination [were] related to the substance of the investigation[,]" they fell "within the scope of protected activity[.]" *Id*. at 1020–21.

No such inextricable intertwinement exists here. Unlike in *Pye*, which addressed an MHRA claim, Harrison alleges liability for his "*external* report to security/law enforcement" under the MWA. Dkt. 46 at 22 (emphasis in original). In *Pye*, both the discrimination complaint and the litigation threat constituted protected conduct under the MHRA, which broadly covers conduct that "oppos[es]" a forbidden practice (such as sex discrimination). Minn. Stat. § 363A.15(1). Here, by contrast, Harrison's assault of Button falls outside of the MWA's

7

protections.[3] As discussed above, the MWA only protects reporting conduct. Minn. Stat. Ann. § 181.932 (prohibiting retaliation against employees who "report[] a violation," "participate in an investigation," "refuse[] an employer's [illegal] order[,]" "report[]" a healthcare violation, "communicate[]" a study, or "communicate[]" information about a state program). Nothing in *Pye* suggests that conduct unprotected by the MWA can become protected by virtue of being "intertwined" with protected conduct.

Harrison's reliance on *Doering v. Wal-Mart Stores, Inc.*, No. 12-cv-2629, 2014 WL 3395745 (D. Minn. July 11, 2014), is similarly unavailing. There, the district court found "that [the plaintiff] ha[d] presented sufficient evidence upon which a jury could conclude that Walmart's stated reason for her termination ha[d] no basis in fact." *Id*. at *12. Because the *Doering* plaintiff had established that Walmart's stated reason was pretext, the district court rejected Walmart's argument that "it had 'reasonable cause' to terminate [the plaintiff]." *Id*. at *14 n.15. But *Doering* is inapposite because, as discussed below, Harrison fails to present any facts upon which a reasonable trier of fact could reject the Company's stated reason for his termination.

Because Harrison has failed to identify evidence that his "reporting was the basis or a cause of h[is] termination[,] . . . [w]e conclude that [Harrison] has presented no direct evidence of retaliation." *Hanson*, 972 N.W.2d at 374.

### B.    *McDonnell Douglas*

Assuming, without deciding, that Harrison has established a prima facie case of reprisal under Minnesota law, the Court proceeds to the pretext analysis, *i.e.*, the third step of the *McDonnell Douglas* framework. *See Hannoon v. Fawn Eng'g Corp.*, 324 F.3d 1041, 1046 (8th Cir. 2003) ("[I]t remains permissible for lower courts to bypass analysis of the prima facie case where the facts permit easy disposition under a later stage of the *McDonnell Douglas* test."). "Sufficient evidence of pretext could include that the employer's stated reason is untrue. In

---

[3] Though Harrison alleges liability for his *internal* complaint to the Company under the MHRA, *id.* at 21–22, he does not argue that his attack of Button was "inextricably intertwined" with that internal complaint. Indeed, Harrison himself explains that the "conduct at issue—locating Button and attempting to bring him to security and law enforcement—was undertaken for the purpose of reporting and pursuing charges." Dkt. 59 at 3.

United States District Court
Northern District of California

Minnesota, an employee could alternatively offer evidence at this step that an improper reason motivated the discharge decision, rather than proving that the employer's reason is untrue. The employee retains the ultimate burden of persuasion." *Id*. at 373 (cleaned up); *see also Snead*, 237 F.3d at 1093–94 (explaining that a plaintiff can establish pretext "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.").

To prove pretext, Harrison disputes facts and conclusions included in the legal department's investigation report. But none of Harrison's anemic critiques of the investigation undermine the Company's explicit factual basis for Harrison's termination or suggest that a prohibited reason more likely motivated the firing.

For instance, Harrison observes that Dawn Fay, his former supervisor and the Company official who fired him, could not immediately recall another instance of a termination resulting from the legal department's recommendation. *See* Dkt. 37-8 at 87:13–88:15. But that observation, standing alone, is unremarkable. There are many logical leaps between that fact and establishing pretext under *McDonnell Douglas*. For instance, Fay may not have encountered many investigation-based termination decisions at all; or, she may not have encountered any like this one, where legal analysis was necessary. Alternatively, it may have been that other cases elevated to the legal department did not compel a recommendation of termination. Ultimately, Harrison fails to explain why the legal department's involvement—as opposed, presumably, to that of human resources—undercuts the Company's stated reason for firing Harrison.

Next, Harrison latches onto the legal department's conclusion that Harrison "engaged in a completely disproportiona[te] reaction" (Dkt. 37-25 at 5) to argue either that the Company favored Button over Harrison or that the Company targeted Harrison for his complaints. Neither argument lands. Nothing about the Company's conclusion—that Button's single act of physical contact based on mistaken identity was less punishable than Harrison's prolonged physical attack— suggests pretext. That Harrison had already physically retaliated against Button in the moment by shoving Button, and that Button had already retreated before Harrison then hunted him down and further took matters into his own hands, bolster the Company's conclusion and cut against any

United States District Court
Northern District of California

9

showing of pretext.

Harrison then attacks the Company's finding that "it would be reasonable to infer that [Harrison's] grossly disproportionate response toward [Button] may have been improperly motivated by his perception of [Button's] sexual orientation." Dkt. 37-25 at 5. The Company's stated basis for the finding was: "[Harrison]'s belief that the slap was sexual in nature appears to be based on his belief that it was a 'homosexual perverted type scenario' which apparently, he mistakenly inferred from [Button] holding the purse of a colleague." *Id.* In other words, the Company appears to have concluded, based on Harrison's own statement, that "it would be reasonable to infer" that homophobia motivated Harrison's attack. As a threshold matter, this finding does not appear to have been causal to the Company's termination decision. But even if it was, it is unclear how that advances Harrison's cause. As Harrison's counsel admitted at the hearing, the Company is allowed to terminate employees for homophobic conduct. If the Company had based Harrison's termination on the inference that homophobia motivated Harrison's violent conduct, the pertinent legal question is whether that rationale was a pretext. Again, nothing in the record so suggests.

Harrison also takes issue with the Company's investigation, noting various factual disputes. For example, Button claimed that he apologized after slapping Harrison, but Harrison disputed that any apology occurred. Dkt. 37-26 at 3-4. The Company's investigation report acknowledges the conflicting accounts of Button's apology but makes no related findings. Dkts. 37-25 at 2-5; 37-26 at 3-5. What this disputed apology has to do with pretext Harrison never explains. Nor does Harrison articulate how the Company's weighing of facts and witness credibility—which it was permitted to do—suggest that the Company fired Harrison for his protected reports.

Ultimately, there is no evidence in this record sufficient to support the inference that the Company's stated reason for firing Harrison was pretextual. Accordingly, Harrison's claims fail at the third step of *McDonnell Douglas* for lack of pretext.

* * *

Because Harrison fails to identify material facts sufficient to create a genuine issue as to

United States District Court
Northern District of California

whether the Company fired him "*because of* his complaints," Harrison's claims under the MHRA and MWA fail. *Johnson*, 66 F.4th at 1118 (emphasis in original); *see* Minn. Stat. Ann. § 363A.15 (prohibiting reprisal "because" of protected conduct); Minn. Stat. Ann. § 181.932 (prohibiting reprisal "because" of protected conduct).

## IV.   CONCLUSION

For the reasons stated, the Company's motion for summary judgment is **GRANTED**. The Clerk will enter judgment by separate order.

**IT IS SO ORDERED.**

Dated: May 11, 2026

_____
AJAY KRISHNAN
United States Magistrate Judge

11